# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 10, 2012 Session

## STATE OF TENNESSEE v. JOSEPH WELLS

**Appeal from the Criminal Court of Shelby County**
**No. W10-00934     Paula Skahan, Judge**

---

**No. W2011-01431-CCA-R3-CD  - Filed June 25, 2012**

---

Joseph Wells ("the Defendant") pled guilty to one count of possession of one-half ounce or more of marijuana with intent to sell, a Class E felony. After a hearing, the trial court denied judicial diversion and ordered the Defendant to serve thirty days of periodic confinement followed by two years of probation. The Defendant has appealed, claiming that the trial court erred in denying judicial diversion, erred in denying full probation, and erred in relying on hearsay statements in imposing sentence. After a thorough review of the record, we conclude that the trial court committed no reversible error. Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Joseph A. McClusky, Lorna S. McClusky, Massey McClusky (on appeal), and Arch Boyd (at trial), Memphis, Tennessee, for the appellant, Joseph Wells.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Glen Baity, Assistant District Attorney General; for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

The Defendant was charged with one count of possessing one-half ounce or more of marijuana with the intent to sell. The Defendant pled guilty to this charge and stipulated to the following factual basis for his plea:

[O]n September 2nd, 2010, about 9:30 officers from the Sheriff's Department Organized Crime Unit executed a search warrant for an address on Lookout Street here in Shelby County. Detectives saw Mr. Wells leave his residence, enter his 2002 Ford Crown Victoria and drive westbound on Lookout. They stopped him a short distance from his residence. The detective advised Mr. Wells that a search warrant had been issued for his residence. And Wells told the officers that he knew what it was about. That he had a small personal – small amount of personal marijuana growing at his house. He was returned to the Lookout address for execution of a search warrant.

During the search warrant of Wells' residence officers located in the attached garage the following items: Eighteen mature marijuana plants and a hydroponic grow operation. Thirty-eight clone marijuana plants on a starter rack.

They located a greenhouse in the backyard. There were nineteen mature marijuana plants, sixteen immature marijuana plants. They located in the kitchen twenty – forty-five point four grams of harvested marijuana in the kitchen cabinet.

. . .

Mr. Wells signed a waiver of rights and agreed to give a statement. During the recorded statement he told the officers he had been growing marijuana since he was 17 years of age. Wells further stated that the current marijuana that was growing in his garage and greenhouse is at least, must be a typo, eight years old. Wells stated that he grows marijuana for his personal use and gives small amounts to friends. He also stated that on September 1st of 2010 he delivered a small amount of marijuana to a friend of his using the 2002 Ford Crown Victoria as the conveyance vehicle.

The Defendant testified that, following his arrest, he resigned his position with Shelby County where he had been employed in the human resources department. He was actively

seeking other employment but had not yet been successful. His prior employment included work for a family business in Jacksonville and work in the Memphis City Schools human resources department. He has a college degree and credits toward a graduate degree in business administration. He has no prior criminal record. He began counseling after his arrest through an agency provided by his prior employment. He was forty-three years old.

The Defendant described his marijuana operation as that of an "advanced hobbyist." He began growing marijuana in his home in 1997 and emphasized that he grew his marijuana for his personal use and claimed that he never sold it. He occasionally gave small amounts to friends, including a friend who was ill and in pain. He described his garden as follows:

> I was proud of my work [growing marijuana plants] because I was an advanced hobbyist. These [plants] were my babies and I loved them. I cared for them greatly not having a wife or child.
>
> When I left work I came home took care of my dog, took care of my home and played with my plants. And so I did not mind showing someone else exactly what I was doing . . . .

The Defendant acknowledged that his marijuana operation was wrong and illegal. He asserted that he would "never . . . do this again."

The Defendant testified that he began smoking marijuana in high school and stated, initially, that he quit smoking on the day he was arrested. Yet, he later admitted that he had smoked marijuana about six weeks prior to the plea hearing (held on May 16, 2011).[1] He also acknowledged that he continued to socialize with friends who smoked marijuana and thought he would fail a drug test because of second-hand smoke. The Defendant stressed that he never smoked marijuana during work hours and did not go to work under the influence.

The trial court admitted into evidence a letter from the Defendant's counselor on letterhead labeled "Concern Employee Assistant [sic] Program" and dated September 16, 2010, eight months earlier. The letter states that the Defendant "is currently participating in counseling" and that "[a] thorough assessment has been completed and [the Defendant] is in compliance with treatment recommendations." The Defendant stated that he continued to see his counselor about twice a month, but he did not present a more recent letter.

---

[1] We note that the presentence report reflects that the Defendant reported that "he last smoked marijuana on 01-07-2011."

Paul Boyd testified that the Defendant reported to him while Boyd was the "administrator for HR for Shelby County Government." Boyd described the Defendant as "a very good employee. Did what was expected of him. And did very good work." He never appeared high to Boyd's knowledge.

In response to the Defendant's request for judicial diversion, the trial court ruled as follows:

> But the problems I'm having I don't dispute that [the Defendant] is a nice person. I'm not disputing that at all. I'm not disputing that he has a good work history. Okay. And appears to have been a good employee over the jobs that he has held. The problem that I have with [the Defendant] is that he comes in here and he minimizes what he has done. And he says I accept responsibility, you know, with one breath and then he says I was an advance[d] hobbyist. I don't have children, I would come home. I have animals and I have this advanced hobby and that's my marijuana plants. And smoking marijuana and I would have friends over and I would give some to friends including friends that were ill, that didn't have insurance and were in so much pain. Like he's just the good [S]amaritan. That he would give it out and proudly show anybody that would come over to his house what he was doing. Because he's so proud of it. Because he's an advanced hobbyist.

> And then further what I have a problem with is he comes in and the exhibits that you introduce are a letter from Concern EAP about the counseling that he is supposedly participating in right now. And first of all the letter is dated September 16, 2010. And it says: A thorough assessment has been completed and [the Defendant] is in compliance with treatment recommendations. And I ask him if he has a more updated, is he still attending and he said, well, yes, I don't have a letter stating that but I could get you one.

> And he says . . . [the] last time he smoked marijuana was September 2nd, the date that he was arrested. And upon further questioning, well, he couldn't pass a drug screen because he's been at poker games with his buddies and due to secondhand smoke it's gotten into [his] system. And when I said, no, that's not the way that works, he wouldn't test positive, then he said, well, um, due to the stress of this, you know, maybe six weeks ago I smoked some marijuana. It wouldn't stay in your system for six weeks. I could give you a drug test today and actually I think we're going to go ahead and do that. We'll get pretrial down here to give him a drug test. The longest marijuana would stay in your system unless you've been smoking continually since – well, since you have been 15 would be thirty days. It might be a little bit longer if you've

-4-

been smoking, you know, constantly. But if you smoked occasionally the longest it could possibly stay in your system would be thirty days according to the experts down in the drug court who I believe more than I believe you.

You've continued to smoke marijuana. You have continued to hang out with your friends who smoke marijuana. You think that you're more deserving of this because you do have a good background. And to me having been the human resources advisor to public officials in Shelby County you should have been setting an example, a good example rather than a horrible example of behavior. And that to me you were in a position of trust which you abused by this behavior. And that makes it more aggravated to me than mitigated, I'm sorry.

Looking at the factors [to] consider granting or denying diversion, your amenability to correction, I think that you can stay out of trouble as far as anything other than smoking marijuana. And I personally don't see you stopping that behavior. The circumstances of the events, this is not your typical possession with intent to distribute marijuana. This is really a very elaborate setup in your home which had gone on for at least eight years. Some of the plants in there by your own admission to the police were eight years old. You were not only smoking it yourself but you were sharing it with friends. Your criminal record is spotless. Your social history appears to be good other than hanging out with other pot smokers, marijuana smokers, pot is the word you – is the term you used. Status of your physical and mental health. Physical health according to you is good. Mental health, I don't, I don't see that being very good if you're so dependant on marijuana since the age of 15, you're now 43. I don't think that's as good as you think it is.

The deterrence value to accused as well as others. I don't think you understand how serious this is and I don't think we need to be sending a message to county workers that if they get involved in something as foolish as this that they can go on a diversion program.

And whether judicial diversion will serve the interest of the public as well as the accused. Had you gone into a rehabilitation program and really turned everything around that would make a difference to me. But it just doesn't seem to have caught on with you and I do not think judicial diversion will serve the interest of the public or you at this point. Weighing everything diversion is denied.

After the trial judge denied diversion, she stated the following:

> Now the question is how much jail time and whether probation is appropriate. And what the appropriate length of sentence should be in this case. I certainly will allow you to be heard on that. *And I think that some type of split confinement is appropriate.* I think maybe some weekend time. Certainly ordering drug treatment is appropriate in this case.

(Emphasis added). The trial court also asked the Defendant if his counseling program required drug tests. When the Defendant answered "no," the trial court remarked, "That's been the problem, then."

The trial court then called a recess during which the Defendant took a drug test. According to the trial court, the Defendant tested positive for marijuana.

After denying diversion and getting the results from the Defendant's drug test, the trial court sentenced the Defendant as a Range I standard offender to two years, to be served by thirty days of periodic confinement coupled with two years of probation. In conjunction with imposing sentence, the trial court stated the following:

> [W]ell, not surprisingly he did test positive for marijuana. And I understand [the Defendant's] been in here talking about I'm making a big deal, making it sound so bad about what he did and he really didn't do anything wrong. He just doesn't get it. He really doesn't get what he did and how bad it was. And you know, what I can just easily do is just say go into custody for a year or two, you know. And then maybe sitting in looking at some cell doors at the workhouse for a year or two will let you think about how bad this is. Because I don't understand how you don't get it. I really don't. That you don't understand that this is serious.
>
> And if you think people in here are not going to tell me what you're talking about during the break, you're wrong. It is horrible. You had a very high position in county government and you were out there manufacturing marijuana, growing pot plants like a common criminal. That's exactly what you were doing. So how you think you're better than anybody else in here with a case, you're not. You're worse because you had all the advantages most of them never had.

The Defendant responded, "I can respect it. Yes, ma'am."

The Defendant now appeals, arguing that the trial court should have granted judicial diversion or full probation and should not have relied on "hearsay" statements made during the recess in imposing sentence.

**Analysis**

*Judicial Diversion*

Judicial diversion is a form of "legislative largess whereby a defendant adjudicated guilty may, upon successful completion of a diversion program, receive an expungement from all 'official records' any recordation relating to 'arrest, indictment or information, trial, finding of guilty, and dismissal and discharge' pursuant to the diversion statute." State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999) (citing Tenn. Code Ann. § 40-35-313(b)). The Defendant is eligible for judicial diversion because he pled guilty to a Class E felony, has not previously been convicted of a felony or Class A misdemeanor, and is not seeking deferral for a sexual offense. See Tenn. Code Ann. § 40-35-313(a)(1)(B)(I) (2010). Nevertheless, the Defendant is not entitled to a presumption that he is a favorable candidate for judicial diversion. See State v. Anderson, 857 S.W.2d 571, 573 (Tenn. Crim. App. 1992).

We will reverse a trial court's denial of judicial diversion only for an abuse of discretion. See State v. Turco, 108 S.W.3d 244, 246 n.5 (Tenn. 2003) (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). Upon review of a denial of judicial diversion, we will accord the trial court the benefit of its discretion if "any substantial evidence to support the refusal exists in the record." Anderson, 857 S.W.2d at 572 (quoting Hammersley, 650 S.W.2d at 356) (internal quotation marks omitted).

A trial court must consider several factors in determining whether to grant judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) special and general deterrence value; and (7) whether judicial diversion will serve the ends of justice. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). When the trial court fails to consider all of these factors, we consider them de novo to determine whether the trial court abused its discretion in denying judicial diversion. State v. Jonathan B. Dunn, No. M2005-01268-CCA-R3-CD, 2006 WL 1627335, at *9 (Tenn. Crim. App. June 12, 2006).

In this case, the trial court considered and made findings as to each of the required factors in support of its decision to deny judicial diversion. Specifically, the trial court found that the Defendant was not amenable to correction because he had not stopped smoking marijuana, he had not entered a rehabilitation program that required frequent drug testing, and he continued to socialize with his marijuana-smoking friends. The circumstances of the

offense included an "elaborate setup" in the Defendant's home that had "gone on for at least eight years." Additionally, the Defendant was sharing his crop with others. The trial court described the Defendant's criminal record as "spotless," but we note that the Defendant had been engaging in his illegal activity for years. The trial court described the Defendant's social history as "good other than hanging out with other . . . marijuana smokers" and accepted the Defendant's description of his physical health as "good." The trial court expressed concern about the Defendant's mental health because of his long-term marijuana habit. As to deterrence, the trial court stressed the seriousness of the Defendant's crime, the court's perception that he did not understand its seriousness, and the danger of sending a message to other government employees that diversion is available "if they get involved in something as foolish as this." The trial court concluded that judicial diversion would not serve either the public's interest or the Defendant's. The trial court also noted that, had the Defendant "gone into a rehabilitation program and really turned everything around," its analysis might have been different.

The Defendant argues that the trial court "placed an undue weight on [his] former status as a county employee" and "took issue" with the Defendant's failure to have enrolled in a drug rehabilitation program. The Defendant contends that the trial court placed too much emphasis on the circumstances of the offense and the need for deterrence.

We disagree. In our view, the trial court placed a great deal of weight on the Defendant's demonstrated lack of amenability to correction. He had not entered a drug rehabilitation program. The letter from his counselor was eight months old. He smoked marijuana after his arrest. He continued to socialize with persons who engaged in illegal marijuana smoking. He told the court that he could not pass a drug test that day, a statement later proved true. The court found that the Defendant did not take his crime seriously. All of these considerations support the trial court's scepticism about the Defendant's amenability to correction.

We also agree with the trial court that the circumstances of the offense are very serious. The Defendant maintained for many years a sophisticated marijuana cultivation operation. He thereby supplied himself and his friends with the illegal substance. He took pride in his illegal activities.

We also agree with the trial court that the Defendant's mental health is questionable, given his long-term marijuana usage, his failure to enter drug rehabilitation, and his apparent inability to stop smoking even after his arrest. Certainly, these concerns also indicate a potential failure of specific deterrence if the Defendant was placed on judicial diversion. All of these concerns also indicate that neither the public nor the Defendant would be served by placing the Defendant on judicial diversion.

In sum, the record contains ample evidence to support the trial court's decision to deny judicial diversion. Discerning no abuse of discretion, we affirm the trial court's ruling on this issue.

*Sentence*

The Defendant is a standard, Range I offender. See Tenn. Code Ann. § 40-35-105(a), (b) (2010). The Range I sentence for a Class E felony is one to two years. Id. § 40-35-112(a)(5) (2010). The trial court sentenced the Defendant to the maximum two year sentence, with thirty days to be served in the workhouse and two years on probation. The trial court ordered that the Defendant serve his thirty days on weekends.

The Defendant complains that the trial court "relied on facts not found in the record in denying . . . full probation," referring to the trial court's comments about statements the Defendant allegedly made during a recess in the proceedings. The Defendant additionally avers in his brief that the trial court also relied on these statements in denying diversion. The Defendant is incorrect. The trial court had denied diversion prior to the recess during which the alleged remarks were made. The Defendant raises no issue with respect to the length of his sentence.

Generally, convicted defendants sentenced to ten years or less are eligible for probation. Tenn. Code Ann. § 40-35-303(a) (2010). Moreover, "[a] defendant who does not fall within the parameters of subdivision (5),[2] and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Id. § 40-35-102(6) (footnote added). However, "[a] court shall consider, but is not bound by, [this] advisory sentencing guideline." Id. § 40-35-102(6)(D). It is the defendant's burden to establish his or her suitability for full probation. See State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-303(b)); State v. Mounger, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999). "This burden includes demonstrating that probation will subserve the ends of justice and the best interest of both the public and the defendant." Carter, 254 S.W.3d at 347 (quoting State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)) (internal quotation marks omitted).

---

[2] Subdivision (5) of Tennessee Code Annotated section 40-35-102 (2010) provides:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

Factors relevant to a trial court's decision about whether to place a defendant on probation include the severity of the offense, a criminal history that "evinc[es] a clear disregard for the laws and morals of society," and the success or failure of past efforts at rehabilitation. Tenn. Code Ann. § 40-35-102(5) (2010); see also Carter, 254 S.W.3d at 347. Additional factors for the trial court's consideration include whether confinement is necessary to protect society from a defendant with a long history of criminal conduct, whether confinement is necessary "to avoid depreciating the seriousness of the offense" or is "particularly suited to provide an effective deterrence to others likely to commit similar offenses," and whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1) (2010); see also Carter, 354 S.W.3d at 347. This Court has recognized that "[t]he guidelines applicable in determining whether to impose probation are the same factors applicable in determining whether to impose judicial diversion." State v. Jeremy Brandon Scott, No. M2010-01632-CCA-R3-CD, 2011 WL 5043318, at *11 (Tenn. Crim. App. Oct. 24, 2011) (citing State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995)).

We review a trial court's denial of full probation de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2010); see also Carter, 354 S.W.3d at 344. However, the presumption of correctness "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" Carter, 354 S.W.3d at 344-45 (quoting State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)). In the event the trial court fails to place on the record its determinations in accordance with the Sentencing Act, the presumption fails and our review is simply de novo. See id. at 345.

In this case, the trial court did not award full probation, but required the Defendant to serve thirty days on weekends followed by two years of probation. The trial court's reasons for ordering this sentence of probation coupled with periodic confinement, see Tenn. Code Ann. § 40-35-307(a) (2010), included the Defendant's having failed a drug test that day and the trial court's finding that the Defendant did not take his crime seriously.

We acknowledge that, in imposing this sentence, the trial court also referred to remarks the Defendant allegedly made during the recess. The trial court erred in its reference to these remarks. These remarks clearly were not appropriately made a part of the record in this matter. Moreover, the trial court's approach foreclosed any opportunity for the Defendant to cross-examine the witness(es) allegedly reporting these remarks and deprived him of the opportunity to testify about the alleged remarks himself. If the trial court found it necessary to possibly consider these statements, the proper procedure would have been for the trial court to place the witness(es) to the Defendant's remarks under oath and have the alleged remarks placed on the record. The Defendant also should have been given an opportunity to cross examine the witness(es) and to testify regarding his alleged remarks.

-10-

Nevertheless, our careful review of the entire record demonstrates the overwhelming amount of admissible proof supporting the trial court's denial of full probation. We also note particularly that the trial court indicated its inclination to order periodic confinement prior to the recess during which the Defendant allegedly made the remarks. As a result, we conclude that the trial court's error was harmless on this issue.

Additionally, as set forth above, most of the factors relevant to judicial diversion weighed against the Defendant. Those same factors weigh against the grant of full probation. Moreover, the Defendant's long-term devotion to both growing and smoking marijuana evinces "a clear disregard for the laws and morals of society." Tenn. Code Ann. § 40-35-102(5). The Defendant also continued to engage in his illegal consumption of marijuana after his arrest, demonstrating his questionable rehabilitative potential, his failure to take his illegal conduct seriously, and the need for specific deterrence. We emphasize particularly that the Defendant failed a drug test on the day of his plea and sentencing hearing. In sum, based upon the totality of the properly admitted evidence, we hold that the trial court committed no reversible error in ordering the Defendant to serve thirty days in periodic confinement coupled with two years of probation.

## Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

_____
JEFFREY S. BIVINS, JUDGE

-11-